**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4226-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALAMEEN ADAMS,

    Defendant-Appellant.

_____

> Argued November 15, 2021 – Decided December 7, 2021
>
> Before Judges Sabatino and Mayer.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 10-07-1735.
>
> John J. McMahon argued the cause for appellant.
>
> Lila B. Leonard, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Lila B. Leonard, of counsel and on the brief).
>
> Appellant filed pro se supplemental briefs.

PER CURIAM

Defendant Alameen Adams appeals from a February 28, 2020 order denying his second petition for post-conviction relief (PCR) without an evidentiary hearing. We reverse and remand to the trial court to conduct an evidentiary hearing on defendant's ineffective assistance of counsel claims.

The facts leading to defendant's convictions for murder, robbery, and weapons offenses are stated in our prior decisions on defendant's direct appeal, State v. Adams, No. A-727-11 (App. Div. March 26, 2013), certif. denied, 216 N.J. 7 (2013), and defendant's first PCR petition, State v. Adams, No. A-4688-16 (App. Div. June 4, 2018). We briefly recite the relevant facts to give context to defendant's arguments raised in his second PCR petition.

Michael Potts and Abdul Simpkins went to buy marijuana from Ian Morris. Defendant accompanied Potts and Simpkins to Morris's apartment building.[1]

Defendant walked to the back of the apartment building and Potts saw defendant enter the building. Potts attempted to gain access to the building through a different door, but the door was locked. Potts then waited a while for defendant to return. Based on the passage of time, Potts believed the drug

---

[1] Morris's apartment building contained eighty-four separate apartment units.

A-4226-19

purchase fell through, so he went to a nearby restaurant and ordered food. Thereafter, Potts walked to another apartment building to visit a different friend.

At the second apartment building, Potts saw defendant. According to Potts, defendant said he "bodied" someone.[2] Potts also saw a bulge in defendant's jacket, implying defendant had a weapon. However, on cross-examination by defense counsel during trial, Potts admitted he never told the police about seeing a bulge in defendant's jacket.

Morris, whose body was found on the fifth-floor landing by a resident of the apartment building, had a gunshot wound to his head. The resident called the police.

Upon arriving at the scene, the police confirmed Morris was dead. The police found items related to drug trafficking near the body, including loose marijuana, a scale, plastic bags, and a cell phone. No shell cases were found. The police were unable to locate any eyewitnesses to the shooting. No other physical evidence was found at the scene.

There were several security cameras located around Morris's apartment building, which recorded video from the night of the shooting. The videotapes

---

[2] Potts testified the term "bodied" meant someone had been killed.

A-4226-19

led police to question Potts, who was seen in the recordings with another man. Potts identified defendant as the second man in the videotape recordings.

The recordings, introduced as evidence during defendant's trial, showed defendant using the rear entrance to gain access to Morris's apartment building at 5:47 p.m. A security camera located at the front of the building showed defendant exiting the building at 5:56 p.m.

The State's evidence at trial included the videotapes from the security cameras at Morris's apartment building on the night of the shooting. The State also introduced testimony from Potts and Detectives Holt Walker and Vincent Apicelli who took part in the shooting investigation.

In cross-examining Detective Walker, defendant's trial attorney elicited testimony that Potts and Simpkins both told the police defendant entered the apartment building to rob Morris. The detective's statement was the only testimony adduced showing that a robbery occurred on the night of the shooting. There was no physical evidence supporting a robbery. No other witnesses offered testimony about a robbery.

Defense counsel elicited additional inculpatory and inadmissible hearsay evidence during his cross-examination of Detective Walker. The detective testified defendant's arrest was based on statements provided to the police by

4

Potts and Simpkins. Walker stated Potts and Simpkins gave statements that defendant shot Morris on the fifth floor of the apartment building. However, the State presented no testimony or statement by either Potts or Simpkins identifying where Morris was shot. Defense counsel elicited further hearsay testimony when Walker testified Simpkins informed the police defendant confessed to "bod[ying] the guy."

After Detective Walker completed his testimony, the State announced Simpkins would not be called as a trial witness. Consequently, there was no testimony from Simpkins regarding a robbery, the location of the shooting, or any other facts related to the shooting.

Defense counsel prompted damaging testimony from Detective Apicelli that Simpkins identified defendant as having committed the crime. While the judge instructed the jury to disregard Apicelli's testimony about Simpkins's hearsay statements to the police, the judge did not give a similar instruction regarding Detective Walker's testimony related to Simpkins's statements.

After an unsuccessful direct appeal and denial of his first PCR petition, defendant filed a second PCR petition. In the second PCR petition, defendant alleged his appellate counsel and first PCR counsel provided ineffective

5

assistance by failing to challenge his trial counsel introducing prejudicial and inadmissible hearsay evidence during cross-examination.

The second PCR judge heard counsels' arguments. In a February 28, 2020 order, accompanied by a twenty-eight page written decision, the judge denied defendant's second PCR petition. The judge held defendant's second PCR petition was not time barred because defendant's arguments addressed ineffective assistance of counsel claims directed to his appellate counsel and first PCR counsel, satisfying the requirements of Rule 3:22-2.[3]

In reviewing defendant's second PCR petition on the merits, the judge found defendant failed to establish a prima facie case of ineffective assistance of counsel under either prong of the Strickland/Fritz analysis.[4] Without conducting an evidentiary hearing, the judge determined defense counsel's questions posed to the detectives "were not intended to elicit hearsay, rather to highlight the weaknesses in the State's case. The statements were not offered for the truth of the matter asserted."

---

[3] Significantly, the State did not file a cross-appeal from the judge's decision declining to find a procedural bar to defendant's second PCR petition.

[4] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42 (1987).

The PCR judge noted the State raised a hearsay objection to defense counsel's questions during Detective Walker's cross-examination and defense counsel responded, "I am not asking what Mr. Simpkins said. I am just asking if the statements were conflicting." Based on defense counsel's response to the trial judge, the second PCR judge concluded the questions were "a strategic move by [t]rial [c]ounsel." The judge held "[w]hen [t]rial [c]ounsel's questions are viewed within the context of his summation, it is evident the decision to bring out small portions of Simpkins['s] statements was a strategic one."

In his counseled brief, defendant argues the following:

POINT I

THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST[-]CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HIS ATTORNEY WAS INEFFECTIVE IN ELICITING INCULPATORY AND INADMISSIBLE HEARSAY THAT CORROBORATED THE STATE'S MAIN WITNESS AND SUGGESTED UNFAVORABLE FACTS NOT IN EVIDENCE.

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS, AND PETITIONS FOR POST[-]CONVICTION RELIEF.

7

B.  DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY ELICITED INCULPATORY AND INADMISSIBLE HEARSAY TESTIMONY DEVASTATING TO HIS DEFENSE AT TRIAL.

In his supplemental pro se brief, defendant argues the following point:

THE PCR COURT ERRED IN ITS RULING THAT DEFENDANT WAS NOT DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY HIS ELICITING HEARSAY STATEMENTS OF A NON-TESTIFYING WITNESS, WHICH UNDERMINED DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL, THEREFORE THE CONVICTION SHOULD BE REVERSED AND A NEW TRIAL ORDERED.

We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion.  State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). A hearing is only required when (1) a defendant establishes a prima facie case in support of PCR; (2) the court determines there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines an evidentiary hearing is required to resolve the claims asserted. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).  In reviewing an ineffective assistance of counsel claim, an evidentiary hearing should ordinarily be granted "because the facts often lie outside the trial record . . . ."

A-4226-19

Ibid. (quoting State v. Preciose, 129 N.J. 451, 462 (1992)).  A PCR petition must be accompanied by assertions based on the record, setting forth with particularity "facts sufficient to demonstrate counsel's alleged substandard performance."  Id. at 355 (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)); see also R. 3:22-10(c).  We must consider a defendant's contentions "indulgently," by viewing the asserted facts in the light most favorable to the defendant.  Cummings, 321 N.J. Super. at 170.

Having reviewed the record, we are satisfied the second PCR judge mistakenly exercised her discretion by denying defendant's request for an evidentiary hearing and we remand the matter for the trial court to conduct a hearing.  In reviewing the transcript of the testimony from the detectives' cross-examination, it appears defense counsel did not anticipate certain responses to his questions.  For example, defense counsel asked Detective Walker if defendant's arrest was based on the videotapes showing defendant entering and exiting Morris's apartment building.  The detective answered the videotapes were "not what I based the arrest warrant on.  I just told you [the] arrest warrant was on the statement of Michael Potts . . . statement from Abdul Simpkins . . . ."  There were other instances on cross-examination where Detective Walker

responded to defense counsel's questions by stating "[b]ased upon statements from Michael Potts, Abdul Simpkins."

The State objected to Detective Walker's cross-examination testimony referring to statements by Simpkins as improper hearsay. In response, defense counsel advised the judge "I am not asking what Mr. Simpkins said. I am just asking if the statements were conflicting [with the statements made by Potts]."

The judge overruled the State's objection and defense counsel questioned Detective Walker regarding inconsistencies in the statements provided to the police by Potts and Simpkins. The detective explained he was unable to answer defense counsel's questions without reviewing the audio recording of the statements. At best, Walker testified it was "possible" the statements of Potts and Simpkins conflicted. However, because the detective could not recall the statements, defense counsel was unsuccessful in his effort to have Detective Walker agree there were inconsistencies in the statements given by Potts and Simpkins.

During a sidebar conference, the judge raised a concern regarding the detectives' testimony in which they repeated statements allegedly made by Simpkins. The judge advised she would "give a curative instruction that there's no statement [from Simpkins]." After considering the matter during a brief court

recess, the State told the judge it objected to any curative instruction about the hearsay statements elicited during Detective Walker's cross-examination.

The judge clarified she would tell the jury "in response to [defense counsel]'s questions the detective discussed a statement that may or may not have been given from Mr. Simpkins. We have no statement from Mr. Simpkins . . . . " She also stated she would tell the jury not to "speculate as to any statement or speculat[e] as to who may be involved in that statement or whether in fact the statement was made."

The judge then asked if defense counsel reviewed Simpkins's audio recorded statement to the police. Counsel advised he reviewed Simpkins's statement but made no proffer to the judge regarding the content of the statement. Defense counsel merely argued "whether it's credible or not is for the jury to determine." Defense counsel claimed it was appropriate for the jury to know Simpkins made a statement to the police. However, the judge ruled the statement's "[c]ontents [we]re not coming in."

After this exchange, the judge obtained counsels' agreement that the jury would be told Simpkins's "statement is not before you and please do not speculate as to what may be in that statement." Regarding Detective Walker's testimony on cross-examination, the judge told the jury, "in response to a

11

question from [defense counsel] about a statement that was given by Mr. Simpkins, I think that testimony, the contents of that statement is not before you, there is no statement here that's before you, all right? . . . . please do not speculate as to what may be in that statement because that statement is not before you."

While defense counsel claimed his cross-examination of Detective Walker focused on potential conflicts in the statements given by Potts and Simpkins, there was no evidence presented during the trial regarding the content of Simpkins's audio recorded statement. In fact, the judge instructed the jury not to speculated about any statements made to the police by Simpkins. Further, in reviewing the trial transcripts, there is no evidence of any conflicts in the statements provided to the police by Potts and Simpkins. During closing argument, defense counsel never even mentioned "possible" conflicting statements by Potts and Simpkins. Thus, we are unsure how the second PCR judge concluded defense counsel's questioning of Detective Walker "show[ed] the jury that there were conflicts in the statements the State relied on."

In reviewing defense counsel's summation, none of the points argued to the jury referenced Detective Walker's hearsay testimony during cross-examination. In closing argument, defense counsel highlighted the absence of Simpkins as a testifying witness and focused on relationship between Simpkins

and Morris as drug dealers in explaining why the jury should find defendant not guilty. Because Simpkins's audio recorded statements to the police were not admitted as evidence and Simpkins never testified at trial, we are unable to discern defense counsel's actual litigation strategy in eliciting damaging hearsay testimony from Detective Walker regarding statements ascribed to Simpkins.

On this record, after reviewing the trial testimony and defense counsel's closing argument, defendant demonstrated he failed to receive adequate legal representation because his trial attorney elicited inculpatory and inadmissible hearsay corroborating the State's main witness, Potts, and suggesting unfavorable facts not supported by the evidence. An evidentiary hearing is required for defendant's trial counsel to explain his reasons for eliciting inculpatory and inadmissible hearsay testimony from Detectives Walker and Apicelli which seemingly undermined defendant's arguments for acquittal.

We were advised during oral argument that defendant's trial counsel still actively practices law in this State. The assigned PCR judge should conduct an evidentiary hearing to determine, with particularity, whether defendant's trial counsel exercised reasonable trial strategy in eliciting hearsay testimony from the State's testifying detective witnesses. Or, as defendant asserts, whether his trial counsel made missteps when cross-examining the detectives without

13

knowing the anticipated responses to the questions posed, resulting in the jury hearing inculpatory and inadmissible hearsay testimony of a non-testifying witness, and suggesting unfavorable facts not based on the evidence.

Accordingly, we remand this matter for an evidentiary hearing to address defendant's trial counsel's basis for eliciting hearsay testimony from the detectives given the mainly circumstantial evidence presented to the jury.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION